**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **SWM INTERNATIONAL, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 7:25-cv-00506** |
| | § | |
| **JACKSBORO SUPPLY COMPANY, LLC,** | § | |
| **and REACH WIRELINE, LLC** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF SWM INTERNATIONAL, LLC'S ORIGINAL COMPLAINT**

Plaintiff SWM International, LLC ("Plaintiff" or "SWM") files this Original Complaint for

patent infringement of U.S. Patent Nos. 11,078,762 ("the '762 Patent"), 11,976,539 ("the '539

Patent"), 12,291,945 ("the '945 Patent), 12,221,864 ("the '864 Patent") and 12,270,284 ("the '284

Patent") (collectively "the Asserted Patents") against Defendants Jacksboro Supply Company,

LLC ("JSC") and Reach Wireline, LLC ("Reach") (collectively, "Defendants").

## I.    PARTIES

1.    Plaintiff SWM is a corporation organized under the laws of the State of Delaware

with its principal place of business at 2225 West Alcock Street

Pampa, TX 79065 USA.

2.    Upon information and belief, Defendant Reach is a limited liability company

organized under the laws of Delaware with a place of business at 11000 W CR 72, Midland, TX

79707. Reach may be served with process through its Texas registered agent, Corporation Service

Company DBA CSC – Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620,

Austin, TX 78701-3218.

3.      Upon information and belief, Defendant JSC is a limited liability company organized under the laws of Delaware with its principal place of business at 802 S Main Street Jacksboro, TX 76458.  JSC may be served with process through its Texas registered agent, Corporation Service Company DBA CSC – Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## II.    JURISDICTION AND VENUE

4.      This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has general jurisdiction over Reach because Reach has a principal place of business in Texas and actively and regularly conducts business in Texas and the Western District of Texas (the "District'), including from its regular and established place of business within this District at 11000 W CR 72, Midland, TX 79707 and 90 Oil Road, Pleasanton, TX 78064. The Court also has specific jurisdiction over Reach, as Reach conducts business in and has committed acts of patent infringement throughout the State of Texas. Specifically, Reach transacts substantial business with entities and individuals in the State of Texas by using products that infringe the Asserted Patents on behalf of those entities and individuals, namely the ORIEN self-orienting perforating gun system ("Accused Product"). Thus, Reach has established minimum contacts with Texas such that the exercise of jurisdiction over Reach would not offend the traditional notions of fair play and substantial justice.

6.      Venue is proper against Reach in this District under 28 U.S.C. § 1400(b) because it has committed acts of infringement and has a regular and established place of business in the District. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017);

*In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017). In particular, Reach publicly represents that it has facilities in Midland and Pleasanton, Texas, both of which are regular and established places of business in this District:



**HEADQUARTERS**
518 US Hwy 281 N,
Jacksboro, TX 76458
682.312.3487

**MIDLAND FACILITY**
11000 W CR 72,
Midland, TX 79707
432.827.0101

**PLEASANTON FACILITY**
90 Oil Road,
Pleasanton, TX 78064

https://funky-way-492144.framer.app/locations. As further evidence of this, Mr. Gary Hernandez holds himself out as "District Manager" of Reach on LinkedIn, with his place of employment being "Midland, Texas:"



\*\*\*



https://www.linkedin.com/in/gary-hernandez-63b38988/. On information and belief, Reach's Midland facility acts as a base of operation for wireline services that give rise to Reach's acts of infringement.

7.      Additionally, upon information and belief, Reach has committed acts of infringement in this District by running the Accused Product into wells on behalf of customers. For example, Edge OFS appears to be an affiliated company that represents that it "delivers a complete lineup of proven energy service companies—each an expert in their field, ***all working under one banner*** of reliability and results:"[1]

---

[1] https://www.linkedin.com/posts/edge-ofs-holdings-llc_from-the-first-turn-of-the-bit-to-final-plug-activity-7360697211095060482-mepW?utm_source=share&utm_medium=member_desktop&rcm=ACoAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs.



Reach advertises that it provides "perforating services" as part of its wireline services, which includes the use of perforating guns.[2] Moreover, Reach and JSC appear to be affiliated companies whereby JSC provides Accused Products to Reach, which then runs those Accused Products downhole in this District as part of its wireline service business. For example, JSC explicitly advertises the Accused Product in LinkedIn posts that specifically reference "REACH WIRELINE":[3]

---

[2] https://reachwireline.com/additional-services

[3] https://www.linkedin.com/posts/jsc1_edge-ofs-is-more-than-a-group-of-service-activity-7357780740090073088-U7vG?utm_source=share&utm_medium=member_desktop&rcm=ACoAAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs.



**JSC | Jacksboro Supply Company**
262 followers
2mo • Edited • 🌐

+ Follow    •••

At Jacksboro Supply Company, our Orien perforating gun systems continue to set the standard for precision and reliability in the field.

From design to delivery, our focus is simple: consistency that operators can trust.

💥 Engineered for performance
💥 Backed by field-proven data
💥 99.98% success rate YTD 2025

📞 For more info, contact the JSC team at 940.567.4050

John Roach

#JSC #OrienGunSystem #99PercentClub #WirelineExcellence #SelfOrientingSuccess #EngineeringLeadership #QualityWithoutCompromise #Consistency

**Edge OFS**
2,660 followers
2mo • 🌐

+ Follow

Edge OFS is more than a group of service companies — it's a unified force built to support the full lifecycle of the well. From the first turn of the bit to final plug & abandonment, we bring unmatched versatility, proven crews, and a commitment to getting it done right. When you need strength, scale, and reliability across the board — we provide the Edge you need throughout North America's top producing fields.

For more info visit us on the web at www.EdgeOFS.com

Gladiator Energy
Ideal Completion Services Inc.
Ironclad Energy
JSC | Jacksboro Supply Company
Lasso Drilling LLC
REACH WIRELINE

👏👍 6

👤 ▾    👍 Like    💬 Comment    🔁 Repost    ➤ Send

JSC also represents on LinkedIn that it ships accused products to the Permian Basin, which includes Midland where Reach's facility is at. *See infra* ¶ 12. Thus, on information and belief, JSC supplies Accused Products to Reach in this District, which are then run into wells in this District by Reach as part of its "perforating services."

8.      This Court has general jurisdiction over Defendant JSC because JSC has its principal place of business in Texas and transacts business in Texas, including from its principal place of business in Jacksboro, Texas. This Court also has specific jurisdiction over JSC, because JSC conducts business in and has committed acts of patent infringement throughout the State of Texas. Specifically, JSC transacts substantial business with entities and individuals in the State of Texas by importing, making, having made, using, selling and/or offering to sell the Accused Products. Thus, JSC has established minimum contacts with Texas such that the exercise of jurisdiction over JSC would not offend the traditional notions of fair play and substantial justice.

9.      Venue is proper against JSC in this District under 28 U.S.C. § 1400(b) because it has committed acts of infringement and has a regular and established place of business in the District. *See TC Heartland LLC*, 137 S. Ct. at 1521; *In re Cray Inc.*, 871 F.3d at 1362–63. For example, JSC has committed acts of infringement in this District, as evidenced by its LinkedIn post of a wellsite photo and a statement that the JSC "team is hard at work ***showcasing*** our innovative JSC PERFORATING GUN SYSTEM for a prominent client":



JSC thus publicly represents that it has a physical presence at customer well sites, which is where the Accused Products are used. On information and belief, at least some, if not most, of those well sites are located in the Permian Basin and thus within this District. For example, Reach Wireline has a facility in Midland, Texas because, on information and belief, Reach runs wireline services at various well sites in the Permian Basin. Moreover, as shown below, Warren Boutte represented that he lived in "Midland, Texas" further evidencing that JSC has a physical presence at well sites

8

in this District.

      10.    Upon information and belief, JSC has a regular and established place of business in this District to service, sell, and/or "showcase" the Accused Products. For example, Mr. Boutte represents that he is currently a "Service Quality Control Specialist" on behalf of JSC:



\*\*\*

As shown under "Experience," Mr. Boutte represents that he held a similar—if not the same—position at Reach before June 2025, and he further indicates that his location was "Midland, Texas." Given that (1) Mr. Boutte represents that he maintains a similar (or same) position with JSC that he had while residing in Midland (for Reach), (2) Reach runs Accused Products into wells

in Midland and those Accused Products are provided to Reach by JSC, and (3) JSC represents that it has a physical presence at well sites that the Accused Products are used (including in Midland), on information and belief JSC has a regular and established place of business in this District that Mr. Boutte operates out of, even if that place of business is not publicly disclosed by JSC.

11.     Additionally, JSC's LinkedIn posts refer to its Jacksboro, Texas as its "home base," which strongly suggests that JSC has another "base" of operation that is not publicly disclosed:[4]

---

[4] https://www.linkedin.com/posts/jsc1_jsc-orien-selforientingguns-activity-7386058852879966208--74r?utm_source=share&utm_medium=member_desktop&rcm=ACoAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs



Indeed, if Jacksboro had only a single physical location, Jacksboro would more logically be characterized as its "base of operation" rather than "home base."

12.     Upon information and belief, JSC directly ships Accused Products to the Permian Basin, including to Reach's Midland facility and/or well sites at which Reach provides wireline services. For example, JSC is registered with the U.S. Department of Transportation (*see infra* ¶ 18) and has trailers and trucks branded with the JSC logo, which are depicted in LinkedIn posts describing the Accused Products "leav[ing] our facility in Jacksboro, Texas [*sic*]" and "head[ing] to the Permian Basin."



https://www.linkedin.com/posts/jsc1_jsc-perforatingsolutions-modulardesign-activity-7363181331213647873-JfzL?utm_source=share&utm_medium=member_desktop&rcm=ACoAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs



https://www.linkedin.com/posts/jsc1_jsc-orien-selforientingguns-activity-7386058852879966208--74r?utm_source=share&utm_medium=member_desktop&rcm=ACoAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs



https://www.linkedin.com/posts/jsc1_jsc-perforatingsolutions-modulardesign-activity-736625080317246208-YFND?utm_source=share&utm_medium=member_desktop&rcm=ACoAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs

JSC thus, upon information and belief, has a physical presence in this District, including for its employees that deliver Accused Products.

13.     Moreover, upon information and belief, Reach constitutes the alter ego of JSC under the more relaxed standard for establishing venue (rather than liability). *See Wsou Invs., LLC v. Canon, Inc. Plaintiff -V- NXP USA, Inc.,* Dkt. 137, slip op. at 14, 6:20-CV-00980-ADA, (W.D. Tex. Feb. 8, 2022). As one non-limiting example, JSC and Reach share employees. For example, Zach Vann represents that he is the Director of HSE & Facilities *at both* Reach and JSC:[5]

---

[5] https://www.linkedin.com/in/zach-vann-csp-csho-87427163/



***



Thus, JSC and Reach appear to have both common directors or officers and common business departments. Upon information and belief, JSC and Reach also have common ownership. Additionally, JSC does not even have its own website to advertise and sell its products, further suggesting that Reach provides marketing and other resources for JSC.

14.    Moreover, upon information and belief, Reach caused the creation of JSC. For example, numerous Reach employees purportedly left Reach to form JSC, even though Reach and JSC appear to be closely related companies that are under "one banner" together. In fact, in

addition to Mr. Boutte purportedly leaving JSC to join Reach, John Roach (alleged former "Engineering Manager" of Reach) became "Director of Engineering" at JSC and a few months later JSC started marketing the Accused Product on LinkedIn.:[6]



\*\*\*

---

[6] https://www.linkedin.com/in/john-roach-7b455623/



Upon information and belief, Mr. Boutte and Mr. Roach left Reach to join JSC so that they could help supply the Accused Products used by Reach.

15.    Further, JSC and Reach both represent that their "headquarters" or "home base" is in Jacksboro, Texas, which appears to have a population of less than 5,000 people. Upon information and belief, the reason JSC and Reach each have their headquarters in the same small town is because they are intricately intertwined with one another, as evidenced by Mr. Vann apparently holding the same title at both companies, and Messrs. Boutte and Roach departing Reach to carry on the same or similar roles at JSC.

16.    Upon information and belief, JSC and Reach also commingle assets, including office facilities. For example, JSC's office in Jacksboro, Texas is located at 802 S. Main St., which is the same address listed for Reach on the Jacksboro Chamber of Commerce website:



https://jacksborochamber.com/list/member/reach-wireline-1283.

17.    Moreover, the address that JSC registered with the Texas Secretary of State is 1321 Ranchers Legacy Trail, Fort Worth, TX 76126—the same address that Reach represents as its "primary location" on LinkedIn:



***



https://www.linkedin.com/company/reach-wireline/about/.

18.    Similarly, the U.S. Department of Transportation information for JSC lists its

mailing address as 518 U.S. Highway 281 N., Unit B, Jacksboro, Texas, which is the same address that Reach advertises as its "HEADQUARTERS."



https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&query_string=3975063.



https://funky-way-492144.framer.app/locations.

19.    Additionally, to the extent JSC uses Reach's facilities in this District for JSC's

business purposes, those facilities are an established place of business for JSC in this District. For example, to the extent JSC employees (e.g., who are "show casing" the Accused Products) use Reach's Midland facilities (11000 W CR 72, Midland, TX 79707) to carry out JSC or Reach's business, said facilities are also a regular and established place of business for JSC.

### III.    THE ASSERTED PATENTS

20.    On August 3, 2021, the United States Patent and Trademark Office ("the Patent Office") duly and legally issued the '762 Patent, entitled "Downhole Perforating Gun Tube and Components" after fair and full examination. A copy of the '762 Patent is attached hereto as **Exhibit A**. Although validity of the '762 Patent was challenged in an *inter partes* review proceeding, not all claims were challenged and some of those that were challenged were not shown to be unpatentable. *See DynaEnergetics Europe GmbH v. SWM International, Inc.*, IPR2022-01372, Paper 27, *63-64 (PTAB Feb. 5, 2024). Consequently, numerous claims of the '762 Patent are a valid and enforceable, the entire right, title and interest of which SWM owns by written assignment.

21.    On May 7, 2024, the Patent Office duly and legally issued the '539 Patent, entitled "Downhole Perforating Gun Tube and Components" after fair and full examination. A copy of the '539 Patent is attached hereto as **Exhibit B**. The '539 Patent is a valid and enforceable United States Patent, the entire right, title and interest of which SWM owns by written assignment.

22.    On February 11, 2025, the Patent Office duly and legally issued the '864 Patent, entitled "Downhole Perforating Gun Tube and Components" after fair and full examination. A copy of the '864 Patent is attached hereto as **Exhibit C**. The '864 Patent is a valid and enforceable United States Patent, the entire right, title and interest of which SWM owns by written assignment.

23.    On April 8, 2025, the Patent Office duly and legally issued the '284 Patent, entitled

"Perforating Gun Having Grounding Assembly" after fair and full examination. A copy of the '284 Patent is attached hereto as **Exhibit D**. The '284 Patent is a valid and enforceable United States Patent, the entire right, title and interest of which SWM owns by written assignment.

24.     On May 6, 2025, the Patent Office duly and legally issued the '945 Patent, entitled "Downhole Perforating Gun System" after fair and full examination. A copy of the '945 Patent is attached hereto as **Exhibit E**. The '945 Patent is a valid and enforceable United States Patent, the entire right, title and interest of which SWM owns by written assignment.

## IV.    SWM'S PATENTED PERFORATING GUN SYSTEM

25.     SWM was founded in 1979 and spent decades engineering perforating gun technology to become one of the leading providers of perforating gun systems. A perforating gun is a tool used in oil and gas wells to create holes in the casing and cement that encases the wellbore. This allows oil and/or gas (also called "hydrocarbons") to flow from the hydrocarbon-rich formation into the wellbore and to the surface. A perforating gun relies on one or more explosive-shaped charges (typically "shaped" to direct their high-pressure explosive jet in a particular direction). These charges are commonly detonated via an electronic signal from the surface, thereby "punching" perforations into the casing and cement. Perforating guns are lowered into the wellbore (typically using wireline or coiled tubing) and, once detonated, are pulled back to the surface so that additional well operations may be performed, such as hydraulic fracking the formation through the perforations to improve the flow of hydrocarbons from the well.

26.     The inability of perforating guns to self-orient has numerous drawbacks, such as increased wellbore friction as the tool is lowered into the well, increased toolstring length, more time spent manually aligning perforating guns, inaccurate perforating (e.g., explosive charges not aimed in the desired direction/angle), and non-uniform perforation holes. SWM's patented

PerfAlign™ Self-Orienting Gun (pictured below) overcomes these drawbacks. The silver tube holds the explosive charges (brass colored) and is secured inside the black tube, and the silver tube is capable of freely rotating to self-orient based on gravity using SWM's patented technology.



This minimizes the drawbacks above, and saves well operators significant costs. To date, over 1,000,000 PerfAlign™ guns have been sold and run into wells. This number evidences the reliability and success of SWM's patented technology.

27.     SWM virtually marks its PerfAlign™ gun in compliance with 35 U.S.C. § 287(a) by physically marking each gun with a webpage that associates the gun with the asserted patents that cover it.

## V.    JSC AND REACH'S INFRINGEMENT

28.     JSC manufactures, sells, offers to sell and/or uses the Accused Product, which is prominently advertised on its LinkedIn page:[7]

---

[7] JSC does not appear to have a website and appears to advertise the Accused Product through LinkedIn and its affiliated companies.





JSC | Jacksboro Supply Company
260 followers
1w • 🌐                                                        + Follow    ...

Delivered fully loaded and ready for deployment, ORIEN eliminates gun-building costs and reduces contact points while maintaining the same length and performance as standard systems. With addressable switch flexibility, best-in-class telemetry, and full Warrior compatibility, it's built to make every run more efficient and every result more reliable.

Optional reusable or disposable gun subs, Arrow shunts, and integrated detonator options give operators the freedom to customize each job without compromise. It's innovation that simplifies the process — and performance that sets a new standard.

When precision and consistency matter most, JSC delivers.
📞 For more info, contact the JSC team at 940.567.4050.

#JSC #SelfOrientingGuns #OilfieldEngineering #Completions #GunSystems #OilfieldInnovation #EngineeringInAction #Orien

https://www.linkedin.com/posts/jsc1_jsc-selforientingguns-oilfieldengineering-activity-7380997179672502272-JYRD?utm_source=share&utm_medium=member_desktop&rcm=ACoAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs



https://www.linkedin.com/posts/jsc1_jsc-perforatingsolutions-modulardesign-activity-7376643712086441984-_AL8?utm_source=share&utm_medium=member_desktop&rcm=ACoAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs

29.    JSC infringes at least one claim of each Asserted Patent by importing, making, using, selling and/or offering to sell the Accused Product, as evidenced by the claim charts attached hereto as **Exhibit F**, which provide non-limiting examples of infringement. SWM will identify all infringed claims when required to do so pursuant to this Court's local rules and/or after SWM has been permitted to take discovery.

30.    Reach infringes at least one claim of each Asserted Patent because, upon

information and belief, it uses the Accused Products that are supplied by JSC. For example, Reach advertises on LinkedIn that it perforates using perforating "guns." Upon information and belief and the relationship between Reach and JSC, the "guns" referenced by Reach are the Accused Products provided to Reach by JSC:



https://www.linkedin.com/posts/reach-wireline_now-reach-wireline-brings-to-you-fully-activity-7276901980260679680-pie3?utm_source=share&utm_medium=member_desktop&rcm=ACoAACl8TrcBQ5SxCkUU0BkeG1zPt3StH7DZlUs

## VI.     CAUSES OF ACTION

### COUNT 1
### (INFRINGEMENT OF U.S. PATENT NO. 11,078,762)

31.     SWM re-alleges the facts recited in the foregoing paragraphs as if fully set forth herein.

32.     The '762 Patent is valid and is presumed valid under 35 U.S.C. § 282.

33.     The Accused Product satisfies every element of at least claim 5 of the '762 Patent, either literally or via the doctrine of equivalents. *See* Exhibit F-1. Therefore, any entity that imports, makes, sells, offers for sale, and/or uses the Accused Product without SWM's authorization infringes the '762 Patent.

34.     Defendants have infringed and continue to infringe the '762 Patent, either literally or through the doctrine of equivalents, by importing, making, using, selling, leasing, and/or offering for sale Accused Product in the United States, including to customers in the Permian Basin.

35.     Defendants' continued infringement of the '762 Patent beyond the date of its first knowledge of this lawsuit is intentional, willful, and without regard to SWM's rights given the clear, express notice of infringement provided by this Complaint.

36.     SWM has suffered monetary damages because of Defendants' infringement. Sale and/or lease of Defendants' infringing product displaces SWM's sales of its patented PerfAlign™ system and, therefore, SWM is entitled to lost profits but in no event less than a reasonable royalty.

### COUNT 2
### (INFRINGEMENT OF U.S. PATENT NO. 11,976,539)

37.     SWM re-alleges the facts recited in the foregoing paragraphs as if fully set forth herein.

38.    The '539 Patent is valid and is presumed valid under 35 U.S.C. § 282.

39.    The Accused Product satisfies every element of at least claim 1 of the '539 Patent, either literally or via the doctrine of equivalents. *See* Exhibit F-2. Therefore, any entity that imports, makes, sells, offers for sale, and/or uses the Accused Product without SWM's authorization infringes the '539 Patent.

40.    Defendants have infringed and continue to infringe the '539 Patent, either literally or through the doctrine of equivalents, by importing, making, using, selling, leasing, and/or offering for sale Accused Product in the United States, including to customers in the Permian Basin.

41.    Defendants' continued infringement of the '539 Patent beyond the date of its first knowledge of this lawsuit is intentional, willful, and without regard to SWM's rights given the clear, express notice of infringement provided by this Complaint.

42.    SWM has suffered monetary damages because of Defendants' infringement. Sale and/or lease of Defendants' infringing product displaces SWM's sales of its patented PerfAlign™ system and, therefore, SWM is entitled to lost profits but in no event less than a reasonable royalty.

## COUNT 3
### (INFRINGEMENT OF U.S. PATENT NO. 12,291,945)

43.    SWM re-alleges the facts recited in the foregoing paragraphs as if fully set forth herein.

44.    The '945 Patent is valid and is presumed valid under 35 U.S.C. § 282.

45.    The Accused Product satisfies every element of at least claim 1 of the '945 Patent, either literally or via the doctrine of equivalents. *See* Exhibit F-3. Therefore, any entity that imports, makes, sells, offers for sale, and/or uses the Accused Product without SWM's authorization infringes the '945 Patent.

46.     Defendants have infringed and continue to infringe the '945 Patent, either literally or through the doctrine of equivalents, by importing, making, using, selling, leasing, and/or offering for sale Accused Product in the United States, including to customers in the Permian Basin.

47.     Defendants' continued infringement of the '945 Patent beyond the date of its first knowledge of this lawsuit is intentional, willful, and without regard to SWM's rights given the clear, express notice of infringement provided by this Complaint.

48.     SWM has suffered monetary damages because of Defendants' infringement. Sale and/or lease of Defendants' infringing product displaces SWM's sales of its patented PerfAlign™ system and, therefore, SWM is entitled to lost profits but in no event less than a reasonable royalty.

### COUNT 4
### (INFRINGEMENT OF U.S. PATENT NO. 12,221,864)

49.     SWM re-alleges the facts recited in the foregoing paragraphs as if fully set forth herein.

50.     The '864 Patent is valid and is presumed valid under 35 U.S.C. § 282.

51.     The Accused Product satisfies every element of at least claim 1 of the '864 Patent, either literally or via the doctrine of equivalents. *See* Exhibit F-4. Therefore, any entity that imports, makes, sells, offers for sale, and/or uses the Accused Product without SWM's authorization infringes the '864 Patent.

52.     Defendants have infringed and continue to infringe the '864 Patent, either literally or through the doctrine of equivalents, by importing, making, using, selling, leasing, and/or offering for sale Accused Product in the United States, including to customers in the Permian Basin.

53.     Defendants' continued infringement of the '864 Patent beyond the date of its first

knowledge of this lawsuit is intentional, willful, and without regard to SWM's rights given the clear, express notice of infringement provided by this Complaint.

54.     SWM has suffered monetary damages because of Defendants' infringement. Sale and/or lease of Defendants' infringing product displaces SWM's sales of its patented PerfAlign™ system and, therefore, SWM is entitled to lost profits but in no event less than a reasonable royalty.

## COUNT 5
### (INFRINGEMENT OF U.S. PATENT NO. 12,270,284)

55.     SWM re-alleges the facts recited in the foregoing paragraphs as if fully set forth herein.

56.     The '284 Patent is valid and is presumed valid under 35 U.S.C. § 282.

57.     The Accused Product satisfies every element of at least claim 1 of the '284 Patent, either literally or via the doctrine of equivalents. *See* Exhibit F-5. Therefore, any entity that imports, makes, sells, offers for sale, and/or uses the Accused Product without SWM's authorization infringes the '284 Patent.

58.     Defendants have infringed and continue to infringe the '284 Patent, either literally or through the doctrine of equivalents, by importing, making, using, selling, leasing, and/or offering for sale Accused Product in the United States, including to customers in the Permian Basin.

59.     Defendants' continued infringement of the '284 Patent beyond the date of its first knowledge of this lawsuit is intentional, willful, and without regard to SWM's rights given the clear, express notice of infringement provided by this Complaint.

60.     SWM has suffered monetary damages because of Defendants' infringement. Sale and/or lease of Defendants' infringing product displaces SWM's sales of its patented PerfAlign™ system and, therefore, SWM is entitled to lost profits but in no event less than a reasonable royalty.

**JURY DEMAND**

61.    SWM asserts its right under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SWM requests entry of judgment in its favor and against Defendants as follows:

a.  Declaring that Defendants JSC and Reach have infringed the Asserted Patents;

b.  Permanently enjoining Defendants from any further infringement of the Asserted Patents;

c.  Declaring that Defendants' infringement has been willful, at least from the filing of this Complaint;

d.  Awarding damages to Plaintiff for all lost profits stemming from Defendants' infringement, together with treble damages for willful infringement, prejudgment and post-judgement interest, and costs, as permitted under 35 U.S.C. § 284;

e.  Awarding damages to Plaintiff in an amount no less than a reasonable royalty, together with treble damages for willful infringement, prejudgment and post-judgement interest, and costs, as permitted under 35 U.S.C. § 284;

f.  Awarding attorney fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

g.  Awarding such other costs and further relief as the Court may deem just and proper.

Dated: October 31, 2025

*/s/ Stephen D. Zinda*
**Stephen D. Zinda**
Texas Bar No. 24084147
*Attorney-in-Charge*
**J. David Cabello**
Texas Bar No. 03574500
**James H. Hall**
Texas Bar No. 24041040
**Munira A. Jesani**
Texas Bar No. 24101967

**Cabello Hall Zinda, PLLC**
801 Travis Street, Suite 1610
Houston, TX 77002
Telephone: (832) 631-9990
Facsimile: (832) 631-9991
David@CHZFirm.com
Stephen@CHZFirm.com
James@CHZFirm.com
MJesani@CHZFirm.com

**ATTORNEYS FOR
PLAINTIFF SWM
INTERNATIONAL, LLC**